*852
 
 MAX N. TOBIAS, JR., Judge.
 

 |]On 30 August 2007, the state filed a bill of information charging Adren Thompson (“Thompson”), the appellant, with possession of cocaine.
 
 [1]
 
 Thompson entered a not guilty plea on 7 September 2007. A hearing on motions began on 25 January 2008 and concluded on 8 February 2008; the district court found probable cause and denied the motion to suppress the evidence. On 28 February 2008, a jury found Thompson guilty as charged. He was sentenced on 17 March 2008 to serve five years at hard labor. On 24 March 2008, the district court denied Thompson’s motion to reconsider sentence; his motion for appeal was granted.
 

 STATEMENT OF FACT S
 

 At midday on 30 March 2007, Officers Lapene and Rodrigue of the New Orleans Police Department were driving a marked police vehicle near the 1700 block of Monroe Street in New Orleans when they observed what they believed to be a hand to hand narcotics transaction between three males. Both officers observed cash exchange hands, and one of the males took an unidentified object from Thompson’s open hand. When the three males saw the police vehicle, they split up and attempted to flee the scene while dropping cash to the ground. The 12officers called for backup and pursued the three males. Officer Rodrigue chased Thompson while Officer Lapene chased one of the other men, who was later identified as Daniel Brooks, Thompson’s codefendant. The third male escaped.
 

 Both Thompson and Mr. Brooks were apprehended on the porch of Thompson’s residence at 1732 Monroe Street. Prior to being apprehended, Thompson discarded a small plastic bag containing what was later determined to be crack cocaine. After arresting Thompson, Officer Rodrigue retrieved the bag from the ground. A bag of cocaine was also found on Mr. Brooks after he was arrested. Two ten dollar bills were found on the ground in the area where the three males were conducting business.
 

 Officer Lapene identified Thompson in open court. Officer Rodrigue was unable to identify Thompson, explaining that he makes hundreds of arrests each year and cannot remember all of the faces of those he has arrested.
 

 Both parties stipulated that criminalist Harry O’Neal was an expert in the identification and examination of cocaine. Samples taken from the plastic bag discarded by Thompson tested positive for the presence of cocaine.
 

 Thompson’s sister, Brandy Thompson, testified that she lives with her brother at 1732 Monroe Street. She was in her bedroom when she heard the outer door to the front door slam. In the living room she saw four officers with their weapons drawn. One of the officers remained with her while the others confronted Thompson in his bedroom. Thompson was arrested inside the house, and then a search of the house was conducted. Ms. Thompson stated that she did not observe |sthe officers retrieve any contraband, but did say that she saw Mr. Brooks standing outside by the police vehicle.
 

 The state recalled Officer Rodrigue, who testified that he never entered the house at 1732 Monroe Street, no weapons were drawn, no search of the house was conducted, and he did not speak with any family members.
 

 
 *853
 

 ERRORS PATENT
 

 A review of the record discloses no errors patent on the face of the record.
 

 ASSIGNMENT OF ERROR NUMBER
 

 In his sole assignment of error, Thompson asserts that the district court erred in failing to allow the defense the opportunity to cross-examine Officer La-pene about a pending conduct investigation against the officer regarding an incident that he was involved in on Mardi Gras day at the Beaches Corner Bar and Grill that may have involved a battery. By not permitting the defense to question the officer about the investigation, Thompson asserts that the district court unfairly limited his right to impeach the officer’s credibility by showing that the officer had a reason to testify favorably for the state, namely, to avoid charges being filed against him.
 
 [2]
 
 He avers that it was important to impeach the credibility of Officer Lapene because only Officer Lapene was able to identify him in open court.
 

 Just before the beginning of Thompson’s trial, the district court granted the state’s motion in limine in which the state sought to prohibit defense counsel from questioning, mentioning, referring, or alluding to any particular acts, vices, or courses of conduct for which the witness had not been convicted, or, more specifically, not to make mention, refer, or allude to any newspaper articles or |4published periodicals that contain allegations of particular bad acts, vices, or courses of conduct for which that witness has not been convicted.
 

 In
 
 State v. Huckabay,
 
 00-1082, pp. 25-26 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1108, this court discussed a defendant’s right to confront his accusers:
 

 An accused is entitled to confront and cross examine the witnesses against him. La. Const, art. 1, § 16. La. C.E. art. 611(B) provides that a witness may be cross-examined on any matter relevant to any issue in the case. Due process affords a defendant the right of full confrontation and cross examination of the State’s witnesses.
 
 State v. Van Winkle,
 
 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201-202. The trial court has the discretionary power to control the extent of the examination of witnesses as long as the court does not deprive the defendant of his right to effective cross-examination.
 
 State v. Hawkins,
 
 96-0766 (La.1/14/97), 688 So.2d 473;
 
 State v. Robinson,
 
 99-2236, p. 6 (La.App. 4 Cir. 11/29/00), 772 So.2d 966, 971. It has been held that evidentiary rules may not supercede [sic] the fundamental right to present a defense.
 
 Id.
 
 However, evidence may be excluded if it is irrelevant. See
 
 State v. Casey,
 
 99-0023, pp. 18-19 (La.1/26/00), 775 So.2d 1022, 1037. Further, confrontation errors are subject to the harmless error analysis so the verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial was surely unattributable to the error.
 
 State v. Broadway,
 
 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817.
 

 La. C.E. art. 607 in pertinent part provides for the introduction of evidence for impeachment purposes:
 

 B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the
 
 *854
 
 lawsuit, or capacity to perceive or to recollect.
 

 Ja * * *
 

 D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
 

 (1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of a witness.
 

 (2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
 

 However, as noted in C.E. art. 608 B: “Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 [of the Code of Evidence] or as constitutionally required.” Per La. C.E. art. 401, evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La. C.E. art. 607 B above reiterates the relevancy test of La. C.E. art. 403, which provides that even if evidence is relevant, the court my exclude it if its probative value is “substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.”
 

 In its motion in limine, the state argued that because the officer was never convicted of any of the alleged charges, the information regarding the investigation could not be used to impeach Officer Lapene at trial, citing La. C.E. art. 609.1 B, which provides, “Generally, only offenses for which the witness has been ^convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.” The district court agreed, likening the investigation to that of an arrest.
 

 Although only convictions can be used to impeach credibility as a general rule, cases have held that possible or ongoing prosecutions that have not resulted in a conviction can be used to show bias or interest under La. C.E. art. 607 D(1). As stated in
 
 State v. Vale,
 
 95-0577, 95-1230, p. 4 (La.1/26/96), 666 So.2d 1070, 1072:
 

 This court granted certiorari because the trial court’s ruling [prohibiting the defense from cross-examining the witness about a pending charge], affirmed by the court of appeal, conflicted with numerous decisions by this court that to the extent exposure of a witness’s motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness’s “hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest.”
 
 State v. Brady,
 
 381 So.2d 819, 822 (La.1980) (collecting cases);
 
 see also State v. Nash,
 
 475 So.2d 752, 755-56 (La.1985). A witness’s bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct.
 
 Id.
 

 
 *855
 
 Thus, alleged criminal conduct which has not resulted in a conviction may be elicited from a witness at trial to show bias or interest. However, here, no testimony given by Officer Lapene was elicited that could have been directly impeached by extrinsic evidence of the alleged investigation against him. For example, in
 
 State v. Cureaux,
 
 93-0838 (La.App. 4 Cir. 10/27/94), 645 So.2d 1215, this court held that a defendant could impeach an officer’s testimony that he had been a police officer for four years with extrinsic evidence that the officer had been suspended for some sixteen months. Also, cf.,
 
 State v. Hollins,
 
 97-627 (La.App. 5 Cir. 11/25/97), 704 So.2d 307 (the court found that evidence of an officer’s suspension was inadmissible for impeachment purposes because it did not involve a conviction. In a footnote, the court noted that had the officer testified at trial that he was an employee in good standing with the sheriffs office, then the defendant could have impeached him with extrinsic evidence that he had in fact been suspended). In sum, we find that the motion in limine was properly granted by the district court because the evidence of the alleged investigation was inadmissible under La. C.E. arts. 608 B and 609.1 B.
 

 Moreover, defense counsel at the motion in limine hearing proffered no evidence that the investigation against Officer La-pene was ongoing or that the officer was disciplined by the police department. The fact that the officer was still on the force at the time of Thompson’s arrest on 30 March 2007 tends to indicate that the officer was absolved of any wrongdoing.
 
 [3]
 
 Thus, Thompson failed to show at the hearing that any possible bias or interest in Thompson’s case existed on the part of Officer Lapene. Also, Officer Lapene was not directly involved in the arrest of Thompson. As reflected above, Officer Rodrigue arrested Thompson. Hence, whether the information regarding the alleged investigation of Officer Lapene was even relevant is certainly arguable. Though Officer Rodrigue could not remember Thompson’s face, Thompson’s representation that Officer Lapene could not have identified him because the officer only saw his back as he was being chased by Officer Rodrigue is ludicrous. Both Thompson and his codefendant were apprehended on the porch of Thompson’s residence. Thus, Officer Lapene had ample opportunity to observe Thompson.
 

 |
 
 ¡¡CONCLUSION
 

 For the foregoing reasons, we affirm the conviction and sentence of Adren Thompson.
 

 [[Image here]]
 

 [1]
 

 . A codefendant, Daniel Brooks, was also charged with the same crime. Mr. Brooks eventually entered a guilty plea as charged.
 

 [2]
 

 . Information regarding the investigation was gleaned by this court from the state's motion in limine, the transcript of the motion in limine, and Thompson's appellate brief.
 

 [3]
 

 . Mardi Gras that year was on February 20th.