JOAN BERNARD ARMSTRONG, Chief Judge.
^STATEMENT OF CASE
On March 10, 2009, the defendant, Walter Black, was charged by bill of information with one count of aggravated battery, a violation of La. R.S. 14:34. The defendant pled not guilty. On May 8, 2009, the trial court denied the defendant’s motion to suppress the evidence and found probable cause. On June 3, 2009, a jury found the defendant guilty of second-degree battery. On June 19, 2009, the defendant pled guilty to the multiple bill and admitted to being a third time felony offender. Accordingly, the trial court found the defendant to be a third time felony offender and sentenced the defendant to serve forty months at hard labor with the Department of Corrections, without benefit of probation, parole, or suspension of sentence. This appeal followed.

STATEMENT OF FACT

The State first called Officer Billy Tre-gle to testify in its case in chief. Officer Tregle testified that on October 25, 2008, at approximately 3:30 A.M., he was assigned to the N.O.P.D.’s Eighth District and was on active patrol with his partner, Officer Brandon Ludwig. He said that as he and his partner approached the intersection of Dauphine and St. Louis streets, they observed what they thought to be a black female walking out of the Double Play bar in the direction of the police vehicle. Officer Tregle noted that the female was followed out of the bar by a white male. Officer Tregle said that when the two had reached the middle of the street, he observed the female turn and strike the man in the face with a gold boot that she had been carrying.
^Officer Tregle and his partner stopped and exited their vehicle, placed the female under arrest, advised her of her rights, and then learned that the arrestee was not a woman. Officer Tregle saw that the victim was bleeding. Officer Tregle testified that he did not observe the defendant and the victim trade blows, noting: “There appeared to be no animosity at the time that the black female turned around and struck the white male.” Officer Tregle advised that after the defendant was arrested, he became irate, lifted his dress, exposed his private parts, and began to urinate in the direction of Officer Ludwig. At that time, the officers again arrested the defendant relative to obscenity. When the officers took the defendant to the Eighth District Station, the defendant *1245 again became irate, exposed himself, and urinated in public.
Officer Tregle identified the defendant, Mr. Black, in court as the man he and his partner had arrested. He went on to identify State’s exhibit one as the blood-stained boot with which the defendant struck the victim and which was confiscated by the officers on the night of the incident. Moreover, he identified State’s exhibits two through six as photographs taken at the incident site in the daytime.
On cross-examination, Officer Tregle reiterated that he did not observe any type of altercation, aside from the battery, between the defendant and the victim. He stated that the victim did not tell him the cause of the incident. Officer Tregle added that while the victim appeared to have been drinking, he did not appear intoxicated.
The State next called the victim, Steven Wingate, to testify at trial. Mr. Wingate testified that he currently lives in Manchester, New Hampshire, with his |spartner of eight years. He advised that he and his partner entered into a New Hampshire civil union on October 11, 2009 and that he was presently employed as a chef in a nursing home. Mr. Wingate admitted having three prior convictions: 1) in 1990, he pled guilty to criminal mischief; and 2) in 1992, he pled no contest to prostitution and simple assault. Mr. Win-gate noted that he was twenty-one in 1992 and has not been arrested since that time.
In regards to the underlying incident, Mr. Wingate testified that on October 25, 2008, he and his partner were in New Orleans on a vacation. On the day of the incident, Mr. Wingate said that his partner went to bed early while he went out to try and take in a ghost walking tour. Unable to catch a ghost tour, Mr. Wingate spent some time in the French Quarter taking night photographs. Mr. Wingate testified that over the course of the day, he consumed approximately five to six drinks. During the night, he estimated that he consumed two to three beers. At approximately 3:30 A.M., Mr. Wingate approached the Double Play bar, at the corner of Dauphine and St. Louis. Mr. Wingate stated that upon approaching the bar, he noticed two men in full drag standing outside the bar. Mr. Wingate said that the men started to harass him, saying that he could not go into the bar. Mr. Wingate asked the men if they were the owners or employees of the bar, but they gave him no reason why he could not enter the bar. Mr. Wingate testified that he brushed past the men, entered the bar, and ordered a beer. Mr. Wingate claimed that he did not feel comfortable in the bar after the foregoing encounter. Accordingly, he finished his beer quickly and left the bar. Mr. Wingate opined that the defendant must have left the bar because upon exiting, he noticed that the defendant was following him. Mr. Wingate and the defendant then had an |4altercation, which Mr. Wingate described accordingly: “When I left the bar there was an altercation between he and I. Basically, he was giving me trouble for entering the bar. I went to brush my way by him. I didn’t strike him, I didn’t hit him, I just kind of went to brush my way by him and that’s when the boot came off and I got clocked in the forehead.” Mr. Wingate said that the boot cut his forehead, causing it to bleed. He asserted that the altercation happened so fast it left him stunned.
The police arrived on the scene within seconds. Mr. Wingate spoke briefly with one of the officers and was treated for his injuries by a paramedic. Despite the paramedic’s advice to the contrary, Mr. Win-gate advised that he elected to forego a visit to the emergency room, opting instead to treat the cut himself. Mr. Win- *1246 gate identified State’s exhibit one as the boot he was struck with, State’s exhibits two through six as the various photographs of the incident site, and the defendant in court as the man who struck him.
On cross-examination, Mr. Wingate stated that: 1) he did not know the defendant; 2) he had not seen the defendant prior to the time of the incident; 3) he did not strike the defendant; 4) he was not looking for sex on the night of the incident; 5) he did not solicit the defendant for sex; 6) the defendant came at him from behind; 7) he saw the defendant remove his boot; 8) he was facing the defendant at the time the defendant removed his boot and struck him; 9) his memory was not impaired from drinking; and 10) when he spoke with the arresting officers on the night of the incident, he merely told them that the defendant had struck him.
|BThe State’s final witness was Officer Brandon Ludwig. Officer Ludwig’s testimony mirrored essentially the testimony given by Officer Tregle. He testified that on October 25, 2008, at approximately 3:30 A.M., he was assigned to the N.O.P.D.’s Eighth District and was on active patrol with his partner, Officer Billy Tregle. Officer Ludwig noted that while on patrol, they approached the intersection of Dau-phine and St. Louis streets at approximately 3:30 P.M. and observed a disturbance coming out of the Double Play bar. Officer Ludwig said that he saw the defendant strike Mr. Wingate in the face with the heel of a high heeled boot. Officer Ludwig stated that Mr. Wingate did not appear to be acting aggressively towards the defendant. Rather, Officer Ludwig testified that the defendant, and two other transvestites, were harassing Mr. Wingate, noting: “The victim wasn’t aggressive at all. If anything, he was trying to escape the situation.”
Officer Ludwig advised that after witnessing the altercation, he and his partner got out of their police vehicle, handcuffed the defendant, and called for an E.M.S. to attend to Mr. Wingate. He further testified that after his arrest, the defendant became irate, lifted his dress, exposed his private parts, and began to urinate in the direction of Officer Ludwig. At that time, the officers again arrested the defendant for obscenity. The officers then took the defendant to the Eighth District Station. At the station, the defendant again became irate, exposed himself, and urinated in public.
Officer Ludwig identified the defendant in court as the man he and his partner arrested. He also identified State’s exhibit one as the blood-stained boot that the defendant used to strike the victim and the boot confiscated by the officers on the night of the incident. Moreover, he identified State’s exhibits two through |fisix as photographs taken at the incident site in the day time. The State rested its case after Officer Ludwig left the witness stand.
The defendant, Mr. Black testified on his own behalf. Mr. Black testified that he is forty-one years of age, a full-time transsexual who lives off of disability, and that he has two prior convictions: 1) a 1999 conviction for first degree robbery; and 2) a 2001 conviction for extortion. He relayed that he visits the Double Play bar every weekend where he and his transgender friends hang out, talk, mingle, and look for sexual partners. Mr. Black testified that he was with another transsexual friend at the time Mr. Wingate entered the Double Play. He claimed that he had, by that point in the evening, removed both of his boots and was walking barefoot in the Quarter because one of his feet was broken. Mr. Black alleged that Mr. Wingate had had several drinks that evening. *1247 However, Mr. Black denied consuming any alcohol because of a bladder infection. He added that Mr. Wingate approached him and his friend and asked where he could buy drugs and sex, in exchange for $200.00. In fact, Mr. Black testified that Mr. Wingate was soliciting every cross-dresser in the bar. Nevertheless, he maintained that he refused Mr. Wingate’s offer. According to Mr. Black, Mr. Win-gate responded by pushing him in the chest, grabbing his dress, and then punching him in the back of the head. He alleged that he struck Mr. Wingate with one of his boots in response to Mr. Win-gate’s actions. As a result, Mr. Black claimed that his actions were in self-defense.
On cross-examination, Mr. Black testified that on the night of the incident, he first went to a bar on Esplanade Avenue at approximately 12:30 A.M. After leaving the foregoing bar, he and his friends went into the French Quarter and |7patronized another bar before arriving at the Double Play. Mr. Black further testified that he took off his shoes at the Double Play because one of his feet was broken. Mr. Black denied taking any recreational drugs or drinking anything other than bottled water on the night of the incident. In regards to the urination allegations, Mr. Black stated that he had to use the restroom while in police custody and that the police would not allow him to use the restroom. He maintained that he was forced to urinate on himself as a result of his bad bladder. Mr. Black added that approximately five to six minutes elapsed from the time he struck Mr. Wingate and the time the police arrived.
The defense rested after Mr. Black’s testimony. After oral arguments, closing instructions, and deliberations, the jury found him guilty of the lesser included offense of second degree battery.

ERRORS PATENT

A review of the record reveals no errors patent.

DISCUSSION

The defendant words his assignments of error accordingly:
Walter Black was denied Due Process when the state failed to negate that his admitted action was a reasonable response to a battery or imminent threat of a battery committed against him by the ‘victim.’ Moreover, the evidence is legally insufficient to sustain either a verdict for the charged offense or for the verdict of second degree battery returned by the jury.
Thus, the defendant asserts that: 1) the State failed to negate his allegation that his actions were justified, because they were committed in self-defense; and 2) the evidence adduced at trial was insufficient to support a verdict for either aggravated battery or second degree battery.
| ¡Assignment of Error No. 1
In regards to the defendant’s justification assignment of error, we first review the relevant battery statutes. La. R.S. 14:34 provides that aggravated battery is “a battery committed with a dangerous weapon.” La. R.S. 14:33 defines battery, in part, as “the intentional use of force or violence upon the person of another.” La. R.S. 14:34.1 indicates that second degree battery is “a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.” La. R.S. 14:34.1 clarifies that for “purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.”
*1248 La. R.S. 14:18 provides that “[t]he fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct.” Further, the defense of justification can be claimed when the offender’s conduct is in defense of persons or property under any circumstances described in Articles 19-22. La. R.S. 14:18(7). Specifically, La. R.S. 14:19 provides in part: “the use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person ... provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.”
As noted by this Court in State v. Fluker, 618 So.2d 459, 462 (La.App. 4 Cir. 1993): “In a non-homicide situation, the defense of justification requires a dual 13inquiry, namely: an objective inquiry into whether the force used was reasonable under the circumstances; and, a subjective inquiry into whether the force was apparently necessary.”
The issue as to who bears the burden of proving self-defense in non-homicide cases is unsettled within the Fourth Circuit. However, the Supreme Court addressed the issue in State v. Cheatwood, 458 So.2d 907 (La.1984). In Cheatwood, the defendant had been convicted of criminal neglect of family. On a writ of review, the Supreme Court addressed the defendant’s sufficiency of the evidence arguments and held that the evidence preponderated in favor of a conclusion that the defendant was physically incapacitated, as a result of a back injury, and was unable to work. Accordingly, the Supreme Court reversed his conviction. In the course of its discussion, the Supreme Court addressed the issue of burden of proof when the defense of justification is raised by a defendant. The Court wrote: “Since ‘justification’ defenses are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused’s conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by the preponderance of evidence.” State v. Cheatwood, 458 So.2d at 910. In a footnote to that decision, the Court noted:
Except in a few specific instances, such as La. R.S. 14:63 (trespassing), La. R.S. 14:69 (possession of stolen property) and La. R.S. 14:14 (insanity), Louisiana statutory criminal law does not directly address the burden of proof for “defenses”. Nevertheless, there is a logical distinction between those defenses which actually defeat an essential element of the offense and those defenses which present exculpatory circumstances that defeat culpability, despite the state’s proof beyond a reasonable doubt of all the essential elements. In the first category are defenses such as intoxication (La. R.S. 14:15) and mistake of fact (La. R.S. 14:16), which preclude the presence of a lamenta! element of the offense. When such defenses are raised by the evidence, the state must overcome the defense by evidence which proves beyond a reasonable doubt that the mental element was present despite the alleged intoxication or mistake of fact. Otherwise, the state would fail to meet its constitutional and statutory burden of proving guilt beyond a reasonable doubt of each element of the offense charged. La. Const. Art. I § 16 (1974); La.C.Cr.P. art. 804; La. R.S. 15:271. However, defenses such as justification (La. R.S. 14:18) are truly “affirmative” defenses, because they do not negate any element of the offense. Compare United States v. Mitchell, 725 F.2d 832 (2nd Cir.1983) with State v. Burrow, 293 Or. 691, 653 P.2d 226 *1249 (1982); see also Model Penal Code, Proposed First Draft No. 1, § 1.12(2) (1961).
It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of the offense and to require defendant to prove by preponderance of evidence the exculpatory circumstances constituting the “affirmative” defense. See W. Lafave & A. Scott, Criminal Law § 8 (1972). The statutory provisions setting forth the state’s burden of proof refer only to the requirement that the state prove the elements of the crime-not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense. See La. R.S. 15:271; La.C.Cr.P. art. 804; former La.C.Cr.P. arts. 263 and 387 (1928). See also State v. Freeman, 427 So.2d 1161 (La.1983), Lemmon, J., concurring. State v. Cheatwood, 458 So.2d at 910, fn. 4.
As referenced, the jurisprudence coming from this Court on this issue has fluctuated. In State v. Fluker, 618 So.2d 459 (La.App. 4 Cir.1993), the defendant was convicted of attempted second-degree murder. On appeal, the defendant challenged the sufficiency of the evidence and asserted that the State failed to prove that he did not act out of self-defense. While this Court affirmed the defendant’s conviction and sentence, it discussed the burden of proof issue as well:
Only a few of the criminal statutes expressly refer to an affirmative defense. La. R.S. 14:63 (trespassing) and La. R.S. 14:69 (possession of stolen property). These statutes, and insanity under LSA-R.S. 14:14, LSA-R.S. 15:432 and LSA-C.Cr.P. article 652, are the only defenses which are expressly designated affirmative. See | nState v. Barnes, 491 So.2d at 46; See also State v. Cheatwood, 458 So.2d 907 (La.1984). However, the statutes which provide for exculpatory circumstances, like justification, do not provide any indication that the defendant bears the burden of proving that his act falls under one of those provisions. La. R.S. 14:18, 14:19 and 14:20. We see no distinction between these provisions, and fail to see why the State would have the burden of disproving in one situation (homicide), and why the defendant would bear the burden of proving in another (non-homicide). Absent a clear direction from our legislature, we feel that the defendant should not have the burden of proving anything.
State v. Fluker, 618 So.2d at 463.
However, in State v. Wischer, 2004-0325 (La.App. 4 Cir. 9/22/04), 885 So.2d 602, this Court took a different approach from the Fluker panel. In Wischer, the defendant was convicted of simple battery. On appeal, the defendant asserted that his conviction should be reversed because his conduct was justifiable as self-defense and reasonable under the circumstances.
Since “justification” defenses are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused’s conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by the preponderance of evidence. La. Rev.Stat. 14:18; State v. Cheatwood, 458 So.2d 907 (La.1984).
[[Image here]]
As noted by this Court in State v. Fluker, 618 So.2d 459, 462 (La.App. 4 Cir.1993): “In a non-homicide situation, the defense of justification requires a dual inquiry, namely: an objective inquiry into whether the force used was rea *1250 sonable under the circumstances; and, a subjective inquiry into whether the force was apparently necessary.” Other courts of appeal in Louisiana have held that as an affirmative defense, the defendant has the burden of showing justification by a preponderance of the evidence. See State v. Wright, 99-1187 (La.App. 3 Cir. 3/1/00), 758 So.2d 301, writ denied, State ex rel Wright v. State, 2000-1614 (La.3/9/01), 786 So.2d 118; State v. Banes, 491 So.2d 42 (La.App. 5 Cir.1986). See also State v. Cheatwood, 458 So.2d 907 (La.1984), where the Supreme Court discussed this burden and [quoted the passage cited to above] ... * * *
| |2It is the opinion of this Court that we adopt the position set forth by the Supreme Court in Cheatwood, and adopted by the 3d and 5th Circuits.
State v. Wischer, 2004-0325, pp. 7-9, 885 So.2d at 606-607.
While subsequent panels of this Court have acknowledged the split between this Court’s Fluker and Wischer opinions, no panel has endorsed one or the other. See State v. Jefferson, 2004-1960 (La.App. 4 Cir 12/21/05), 922 So.2d 577, and State v. Stakes, 2008-1217 (La.App. 4 Cir. 9/9/09), 19 So.3d 1233. In both of the foregoing cases, this Court found it unnecessary to resolve the split in opinions because of the particular facts of each case.
Here, the defendant argues that the State’s evidence does not negate his claim that he hit Mr. Wingate with his boot out of self-defense. Rather, the defendant cites to discrepancies between his version of events and the version put forward by the State’s witnesses. However, our review of the record indicates that under either standard set forth above, the evidence adduced at trial was sufficient to negate the defendant’s self-defense claim.
Specifically, the defendant testified that he decided to leave the Double Play after Mr. Wingate pushed him in his chest. He claimed that after leaving the bar, Mr. Wingate pulled on his dress’s hood and punched him in the back of the head. He said that Mr. Wingate punched him while they were both standing in the street. However, on cross-examination, the defendant testified that he did not know who grabbed and punched him from behind. Further, the defendant insisted that the police came after the fact and did not witness his fight with Mr. Wingate.
In contrast to the defendant’s testimony, Officer Tregle testified that he witnessed the entire confrontation and that he saw no animosity between the parties | 18or any altercation prior to the battery. Further, Officer Ludwig testified that Mr. Wingate did not appear to be acting aggressively towards the defendant. Rather, Officer Ludwig testified that the defendant, and several other transvestites, were harassing Mr. Wingate. Moreover, Officer Ludwig stated that Mr. Wingate did not appear to be aggressive, but rather was attempting to escape the situation. Mr. Wingate also testified that he was not aggressive towards the defendant. Thus, the testimony adduced from the State’s witnesses contradicts the defendant’s assertion that his actions were reasonable and necessary.
The jury was aware of the various inconsistencies and the differing versions offered by the State and the defendant as to what led to the battery. The jury apparently chose to believe the testimony of the State’s witnesses over that of the defendant. This court has repeatedly held that a fact finder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La. App. 4 Cir. 5/31/00), 765 So.2d 432. Given *1251 the testimony in this case, the jury did not abuse its discretion by crediting the testimony of the State’s witnesses as to what happened prior to the battery. Thus, under either standard set forth above, there was sufficient evidence for the jury to negate the defendant’s claim of self-defense.

Assignment of Error No. 2

The defendant argues in his second assignment of error that his conviction and sentence should be reversed because the evidence adduced at trial was insufficient to support a verdict for either aggravated battery or second degree battery, the offense for which he was convicted. In State ex. rel. Elaire v. Blackbum, 424 So.2d 246, 251 (La.1982), the Louisiana Supreme Court held that a defendant must “make a contemporaneous objection to the instruction on responsive verdicts in order to complain on appeal of the insufficiency of evidence supporting the responsive verdict.” Citing La.C.Cr.P. art. 814. See also State v. Williams, 99-1581, p. 10 (La. App. 4 Cir. 6/14/00), 766 So.2d 579, 584. It is sufficient that this objection be made after the jury is charged, but before the jury begins to deliberate. State v. Rideau, 2005-0462, p. 18 (La.App. 4 Cir. 12/6/06), 947 So.2d 127, 138. In adopting this rule, the Court reasoned:
“[i]t would be unfair to permit the defendant to have the advantage of the possibility that a lesser ‘compromise’ verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.”
State ex. rel. Elaire v. Blackburn, 424 So.2d at 251-252.
In the present matter, the record on appeal shows no objection to any of the potential responsive verdicts for aggravated battery, as listed in La.C.Cr.P. art. 814(14). Accordingly, this Court need only consider if the evidence was sufficient to support a conviction of the greater offense, aggravated battery. See State Ex. Rel. Elaire, 424 So.2d at 251.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact | ^necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. State v. Shaw, 2007-1427, p. 15 (La. App. 4 Cir. 6/18/08), 987 So.2d 398, 408. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. Id. The fact finder’s discretion ■will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In the instant matter, the defendant was charged with aggravated battery. La. R.S. 14:34 defines aggravated battery as “battery committed with a dangerous weapon.” “Battery” includes “the intentional use of force or violence upon the person of another.” See La. R.S. 14:33. The evidence adduced at trial indicates *1252 that the defendant struck Mr. Wingate with a high heeled boot and that he intentionally swung the boot. The following colloquy, taken from the defendant’s direct examination, demonstrated that he intended to strike Mr. Wingate:
Q. Now, I show you what the State has marked Exhibit Three, which the Jury members have seen. Where were you when you walked out the bar and where was he?
A. I was around this corner. Mr. Win-gate came. I wanted to cross the street because I was parked on that side of the street. When I came out the door, it didn’t happen in no intersection. He got hit right here by this door. When he grabbed me from behind and punched me in the back of my head, that’s when the shoe was never on my foot. I took it off my foot. That’s when — I’m like — my reaction—
Q. You struck him then?
|1fiA. I sure did. I’m not going to sit here and lie and tell nobody I didn’t do it. Yes, I did. I’m sorry that it happened but Mr. Wingate got to always understand one thing. You just can’t go around pulling on people. I was parked on that side.
Although the defendant contends that he acted in self-defense, testimony from the State’s witnesses undermined his assertion that his actions were both reasonable and necessary and thus, rebutted his justification defense. Accordingly, this court finds that the evidence offered by the State was sufficient to support an aggravated battery conviction had the jury chosen to do so.
We now consider his claim that the State failed to establish that the boot he used to strike the defendant was a dangerous weapon pursuant to La. R.S. 14:34. La. R.S. 14:2(A)(3) provides in part that a dangerous weapon is “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” Thus, virtually any item, no matter how innocuous, can be considered a dangerous weapon provided the manner in which it is used is likely to produce death or great bodily harm. State v. Bonier, 367 So.2d 824 (La.1979).
In State in Interest of Ruschel, 411 So.2d 1216, 1217 (La.App. 4 Cir.1982), this Court held that “a steel toed/heeled boot is a ‘dangerous weapon’ within the context of the aggravated battery statute, when the boot is used to kick a victim with the purpose of causing great bodily harm.” Likewise, in State v. Taylor, 485 So.2d 117 (La.App. 2 Cir.1986), the Louisiana Second Circuit Court of Appeal held that a tennis shoe was a dangerous weapon for purposes of an aggravated battery offense where: 1) the defendant kicked and stomped the victim in the face and about the head while the defendant’s cousin and a third-party held the victim 117down; 2) the victim was bleeding profusely from his nose and mouth; and 3) the defendant used his shoes in manner calculated to produce great bodily harm. Additionally, in State v. Munoz, 575 So.2d 848 (La.App. 5 Cir. 1991), the Louisiana Fifth Circuit Court of Appeal held that a tennis shoe was a dangerous weapon where: 1) an eyewitness testified that the defendant kicked the victim in the head so forcefully that the impact lifted the victim’s body off the ground; and 2) the physician who operated on the victim characterized the defendant’s attack as brutal.
The jurisprudence cited herein and the facts in the record demonstrate that the high heeled boot as used by the defendant can be considered a dangerous weapon for purposes of La. R.S. 14:34. Specifically, the record indicates that: 1) the defendant *1253 intended to strike Mr. Wingate with the boot; 2) the defendant struck Mr. Wingate with the intent of teaching him a lesson; 3) the heel of the boot, when swung, acted like a sharp knife; and, 4) the boot’s heel cut Mr. Wingate’s forehead, causing him to bleed and leaving him stunned.
Based on the foregoing, we find no error in the jury verdict. Accordingly, the defendant’s conviction and sentence are affirmed.
LOVE, J., Concurs in the Result and Assigns Reasons. BELSOME, J., Concurs in the Result and Assigns Reasons.