TERRI F. LOVE, Judge.
 

 This appeal arises from a conviction of second degree battery. The defendant waived sentencing delays and received a
 
 *53
 
 three-year suspended sentence with active probation immediately after trial. The defendant was also ordered to attend a domestic violence course and submit to eight drug tests. Given the evidence in the record, we do not find that the trial court erred by entering the jury’s verdict. The conviction and sentence are affirmed.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Jeffrey and Molly Pleasant were married for twelve years and had three children. They were visiting New Orleans for Mr. Pleasant’s board meeting. That morning, Mr. Pleasant went to his meeting. Late in the morning, a friend, Steven, visited Mrs. Pleasant, and they went to Antoine’s for lunch. Shortly after they arrived at the restaurant, Mr. Pleasant joined them, and the group ate and had drinks before taking a walk on Bourbon Street. According to Mr. Pleasant, he arrived at Antoine’s at approximately 1:30 or 1:45 p.m. Another friend of Mrs. Pleasant’s, Wendy, joined the group.
 

 According to Mr. Pleasant, he became angry and decided to return to the hotel at approximately 6:00 p.m. He testified that he was upset that Mrs. Pleasant would not go back with him because he was concerned for her safety. Mr. Pleasant 12stated that Mrs. Pleasant had been drinking all day and reached her limit. He admitted that he consumed a beer at each of the six bars on Bourbon Street he alleges the group attended. He estimated he consumed some six to eight beers that day, but denied consuming any more alcohol when he returned to the hotel.
 

 According to Mrs. Pleasant, they went to a maximum of three bars, and she did not recall how many drinks she consumed. After Mr. Pleasant returned to the hotel, Mrs. Pleasant went to Wendy’s apartment, which is located above Restaurant August. Mrs. Pleasant called Mr. Pleasant to invite him to eat dinner with them, but he said he was leaving her, packing, throwing her things away, and returning to Monroe. Concerned, Mrs. Pleasant asked Wendy to give her a ride to the hotel at approximately 8:00 or 8:30 p.m.
 

 Mrs. Pleasant arrived at her hotel room as a food delivery boy was leaving. Mr. Pleasant was still angry. He ordered a burger and fries, but would not let Mrs. Pleasant share. Mrs. Pleasant ordered a pizza from room service and changed, into her nightgown. She then allegedly attempted to watch a game with her husband.
 

 Mrs. Pleasant’s pizza was delivered, and Mr. Pleasant went to the bedroom. Mrs. Pleasant testified that she followed him and sat on the bed, trying to talk to him and quell the fight. According to Mr. Pleasant, she was drunk and came in the bedroom, belly flopped on the bed, and lay across him, which obstructed his view of the game. He stated that he picked Mrs. Pleasant up, carried her back into the living room, and placed her on the couch. Mrs. Pleasant testified that she returned to the bedroom, exclaiming, “Let’s stop. This is dumb.” Mr. Pleasant carried her out again, and Mrs. Pleasant returned to the bedroom again, trying to talk to him. According to Mrs. Pleasant, Mr. Pleasant picked her up from behind, threw her onto the couch, and her head hit the coffee table. According to Mr. Pleasant, Mrs. IsPleasant struggled this last time, and they both fell to the couch. Mr. Pleasant claimed he sustained bruises from this fall. Mrs. Pleasant testified that when she turned around from her position on the floor, Mr. Pleasant was throwing the pizza plate at her, like a frisbee. The pizza plate struck Mrs. Pleasant, which she described as “horribly, horribly painful.”
 

 
 *54
 
 Mr. Pleasant admitted throwing the pizza plate, but averred that he did not throw it at her and denied throwing it like a frisbee. According to Mr. Pleasant, Mrs. Pleasant’s pizza arrived after he put her on the couch. He testified that she exclaimed, “[d]on’t think you’re getting f-ing pizza.” According to Mr. Pleasant, he responded by grabbing the pizza plate, tossing it onto the couch, and walking back into the bedroom. He averred that he did not intend to hit Mrs. Pleasant, and that he did not know where the plate went after he tossed it. He heard Mrs. Pleasant exclaim, “Ow,” but did not check on her. Mr. Pleasant denied intending to hit Mrs. Pleasant and opined that her injuries may have occurred when he took her from the bedroom to the couch. He asserted that a cushion on the couch next to Mrs. Pleasant was the intended target of the pizza plate. Mr. Pleasant responded with an “Umph,” and returned to the bedroom.
 

 Mrs. Pleasant called for help immediately. Hotel security arrived, and the police arrived a few minutes later. Hotel security treated her arm with a bag of ice.
 

 Upon arriving at the scene, Officer Mark Anthony Vasquez found Mrs. Pleasant in an hysterical state and observed “a large bruise on her right arm with a little swelling around it and it was real red.” Officer Travis Ward, who responded with Officer Vasquez, also described the injury as “a large, raised bruise on her right arm, upper arm area.” Officer Vasquez continued, “[i]t was a bruise with raised swelling.” He observed alcoholic “drinks all over the room, in both rooms.” |4Mrs. Pleasant “was holding her arm like clutching her arm in pain.” The bruise was two or three inches long and approximately an inch wide. The bruise was “real red” and looked like a straight line, as though Mrs. Pleasant had been hit with a straight edged object. The officers identified pictures taken of Mrs. Pleasant’s arm, which they described as accurate depictions, despite their lack of clarity. Officer Vasquez also identified the plate, which was recovered from the scene. Mrs. Pleasant advised the police that she would seek medical attention for her arm later, if needed.
 

 Officer Vasquez testified that Mr. Pleasant was placed under arrest for domestic abuse battery after he admitted throwing the plate. He continued, “[t]he aggravated battery being that he used a pretty, pretty significant — you know, the plate’s pretty, pretty large, heavy item, you know. If he would have hit her in the face he could have caused pretty serious damage, you know.” On cross examination, Officer Vasquez was asked about his difficulty in identifying Mr. Pleasant at the preliminary hearing. He claimed his view of Mr. Pleasant was obstructed at the hearing.
 

 Mrs. Pleasant described the resulting injury as “a softball sized bruise for two months on my arm.” She said the bruise was “almost black it was so deep.” When presented with pictures of her arm, Mrs. Pleasant said the picture did not accurately depict her injury. Instead, she said it was “very red” and “raised” and described it as “a straight line that was already raised immediately it started to swell.” The day after, the injury spread, growing and darkening. She described the injury as “huge” two days after the pizza plate struck her.
 

 As a result, Mr. Pleasant was charged with aggravated battery with a dangerous weapon, “TO WIT: A GLASS PLATE UPON MOLLY PLEASANT.” During discovery, Mr. Pleasant filed a
 
 subpoena duces tecum
 
 seeking “A copy of the personnel file, including any and all information regarding any formal reprimands or suspensions, for Officer Travis Ward,” which the trial court denied.
 

 
 *55
 
 Mr. Pleasant was tried by a jury that returned a responsive verdict of second degree battery. Mr. Pleasant waived sentencing delays and received a three-year suspended sentence with active probation. Mr. Pleasant was also ordered to attend a domestic violence course and submit to eight drug tests. A “stay away order” was also in effect. This appeal followed.
 

 ERRORS PATENT
 

 The record contains no errors patent.
 

 INSUFFICIENT EVIDENCE
 

 Mr. Pleasant asserts that the evidence in the record is insufficient to sustain a second degree battery conviction. His argument is twofold. Initially, Mr. Pleasant argues that Mrs. Pleasant’s injuries were not severe enough to constitute “serious bodily injury.”
 
 See
 
 La. R.S. 14:34.1(B).
 
 [1]
 
 In response to the State’s assertion that he did not object to any responsive verdicts and that the record could support an aggravated battery conviction, Mr. Pleasant then avers that the pizza plate or tray does not constitute a “dangerous weapon.”
 
 See
 
 La. R.S. 14:34 and La. R.S. 14:2(A)(3).
 
 [2]
 

 When assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found the defendant 1 guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This review must include the whole record, as a rational fact finder does.
 
 State v. Mussall,
 
 523 So.2d 1305, 1310 (La.1988),
 
 State v. Black,
 
 09-1664, p. 15 (La.App. 4 Cir. 6/17/10), 41 So.3d 1243, 1251. “If rational finders of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all of the evidence most favorable to the prosecution must be adopted.”
 
 Black,
 
 09-1664, p. 15, 41 So.3d at 1251. “It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.”
 
 State v. Johnson,
 
 619 So.2d 1102, 1109 (La.App. 4th Cir.1993). “[Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of’ the fact finder.
 
 State v. Brumfield,
 
 93-2404, p. 5-6 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. Moreover, “[cjonfiicting testimony as to factual matters is a question of weight of the evidence, not sufficiency.”
 
 State v. Jones,
 
 537 So.2d 1244, 1249 (La.App. 4th Cir.1989). Like all factual matters, credibility determinations are “entitled to great weight and will not be disturbed unless contrary to the evidence.”
 
 Id.
 
 “Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion.”
 
 State v. Marshall,
 
 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369.
 

 Mr. Pleasant was originally charged with aggravated battery, a violation of La. R.S. 14:34. The jury found Mr. Pleasant guilty of second degree battery, a violation of La. R.S. 14:34.1, and a statutory responsive verdict to aggravated battery pursuant to La. C.Cr.P. art. 814(A)(14). Mr. Pleasant contends that
 
 *56
 
 the record does not contain sufficient facts supporting conviction of second degree battery because the State did not prove the battery was committed “when the 17offender intentionally inflicts serious bodily injury.” La. R.S. 14:34.1. The State does not controvert Mr. Pleasant’s assertion that Mrs. Pleasant did not suffer serious bodily injury. Instead, the State argues that Mr. Pleasant’s failure to object to the responsive verdict requires the affirmation of his conviction if the record supports the original charge.
 

 In
 
 State ex rel. Elaire v. Blackburn,
 
 424 So.2d 246, 251 (La.1982), the Louisiana Supreme Court held that a defendant must “make a contemporaneous objection to the instruction on responsive verdicts in order to complain on appeal of the insufficiency of evidence supporting the responsive verdict.”
 
 See also State v. Williams,
 
 99-1581, p. 10 (La.App. 4 Cir. 6/14/00), 766 So.2d 579, 584. It is sufficient that this objection be made after the jury is charged, but before the jury begins to deliberate.
 
 State v. Rideau,
 
 05-0462, p. 18 (La.App. 4 Cir. 12/6/06), 947 So.2d 127, 138. In adopting this rule, the Court reasoned:
 

 [i]t would be unfair to permit the defendant to have the advantage of the possibility that a lesser “compromise” verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.
 

 Blackburn,
 
 424 So.2d at 251-52. Absent an objection entered at a time when the trial judge may take action, a reviewing court may affirm if the evidence supports a conviction of the greater offense, aggravated battery in this case.
 
 Blackburn,
 
 424 So.2d at 251. If the evidence in this case supports an aggravated battery conviction, Mr. Pleasant’s second degree battery conviction must be affirmed.
 

 “Aggravated battery is battery committed with a dangerous weapon.” La. R.S. 14:34. “Battery is the intentional use of force or violence upon the person of another.” La. R.S. 14:33. In order to maintain a conviction for aggravated battery, |8the record must support a jury’s finding that Mr. Pleasant intentionally used force or violence upon Mrs. Pleasant with a dangerous weapon (i.e. the pizza plate/tray).
 

 Mr. Pleasant contends that the pizza plate or tray that he threw at Mrs. Pleasant is not a dangerous weapon pursuant to La. R.S. 14:2(3). La. R.S. 14:2(A)(3) defines a dangerous weapon as “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” This Court has noted that “virtually any item, no matter how innocuous, can be considered a dangerous weapon provided that the manner in which it is used is likely to produce death or bodily harm.”
 
 State v. Black,
 
 09-1664, p. 16 (La.App. 4 Cir. 6/17/10), 41 So.3d 1243, 1252. The dangerousness of an object by reason of the manner in which it was used is an issue of fact for the jury or fact finder to decide.
 
 State v. Bonier,
 
 367 So.2d 824, 826 (La.1979),
 
 In re K.M.,
 
 10-0649, p. 5 (La.App. 4 Cir. 9/29/10), 49 So.3d 460, 464. Louisiana jurisprudence has upheld determinations that “a stick, an ink pen, rum, a tennis shoe, and a metal pipe” were dangerous weapons in the manners used in individual cases.
 
 See State v. Pamilton,
 
 43, 112, p. 8 (La.App. 2 Cir. 3/19/08), 979 So.2d 648, 654.
 

 The pizza plate/tray recovered from the hotel room was introduced into the record, identified by Officer Vasquez, and inspected by the jury. Interpreting this evidence in a light most favorable to the State, the physical presentation of the plate/tray
 
 *57
 
 could have influenced the jury, which caused the jury to determine that the plate/tray was a dangerous weapon. The conclusion that Mr. Pleasant intended to hit Mrs. Pleasant is supported by Mrs. Pleasant’s testimony that Mr. Pleasant threw the object at her like a frisbee. A finding of intent supports the conclusion that the plate/tray was used in a manner “calculated or likely to produce death or | ggreat bodily harm.” La. R.S. 14:2(A)(3).
 

 Reasonable minds could differ on this conclusion, but the record does not indicate that the fact finder abused its discretion. Thus, Mr. Pleasant’s throwing of the plate/tray like a frisbee at Mrs. Pleasant supports a fact finder’s decision that it was a dangerous weapon for purposes of La. R.S. 14:33. Accordingly, we find the record sufficient to support a conviction of second degree battery and, therefore, affirm Mr. Pleasant’s conviction.
 

 OFFICER’S PERSONNEL FILE
 

 Mr. Pleasant asserts that the trial court erred in not allowing him to obtain one of the investigating officers’ personnel file. He submits that the file would have shown that the officer in question was suspended after his arrest. Mr. Pleasant suggests that the file could have provided impeachment evidence, asserting that the officer in question “provided the most substantive testimony backing up Ms. Pleasant’s characterization of her injury, which ... did not appear to be” serious bodily injury “as defined by Louisiana law.” However, Mr. Pleasant cites to the law on producing exculpatory evidence enunciated in
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Mr. Pleasant does not propose that anything in the officer’s file was exculpatory, other than the suggestion that it contains evidence of disciplinary proceedings, which in some way would impeach the officer’s testimony.
 

 Pursuant to La.C.Cr.P. art. 718, defendants are entitled to production of documents within the possession, custody, or control of the State that are “material and relevant to the issue of guilt or punishment.” Mr. Pleasant suggests that he could have used evidence of a suspension to impeach an officer’s testimony. However, La. C.E. art. 607 provides, in pertinent part:
 

 |inC. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
 

 D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
 

 (1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
 

 (2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
 

 La. C.E. art. 608 provides:
 

 A. Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but subject to these limitations:
 

 (1) The evidence may refer only to character for truthfulness or untruthfulness.
 

 
 *58
 
 (2) A foundation must first be established that the character witness is familiar with the reputation of the witness whose credibility is in issue. The character witness shah not express his personal opinion as to the character of the witness whose credibility is in issue.
 

 (3) Inquiry into specific acts on direct examination while qualifying the character witness or otherwise is prohibited.
 

 B. Particular acts, vices, or courses of conduct. Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.
 

 C. Cross-examination of character witnesses. A witness who has testified to the character for truthfulness or untruthfulness of another witness may be cross-examined as to whether he has heard about particular acts of that witness bearing upon his credibility.
 

 In
 
 State v. Thompson,
 
 08-0874, p. 7 (La.App. 4 Cir. 4/8/09), 10 So.3d 851, 855,
 
 writ denied,
 
 09-1044 (La.1/29/10), 25 So.3d 827, this Court rejected the defendants’ post-trial claims that his right to present a defense was violated by the trial court’s refusal to allow the defense to present evidence of a police officer’s pending disciplinary investigations. The trial court granted the State’s motion in limine and prohibited the defense from mentioning any published accounts of an investigation concerning a police officer witness that did not result in a conviction.
 
 Id.,
 
 08-0874 at pp. 3^, 10 So.3d at 853. On appeal, Thompson argued that this ruling unfairly limited his right to impeach the officer’s credibility.
 
 Id.,
 
 08-0874 at p. 3, 10 So.3d at 853. This Court rejected the argument, noting that pursuant to La. C.E. art. 608 B, particular acts could not be used for the purpose of impeaching a witness’ credibility.
 
 Id.,
 
 08-0874 at p. 5, 10 So.3d at 854. This Court also noted:
 

 La. C.E. art. 607 B above reiterates the relevancy test of La. C.E. art. 403, which provides that even if evidence is relevant, the court my [sic] exclude it if its probative value is “substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.”
 

 Id.
 
 This Court further recognized that even though only convictions may be used for impeachment under La. C.E. art. 609. 1, that
 

 cases have held that possible or ongoing prosecutions that have not resulted in a conviction can be used to show bias or interest under La. C.E. art. 607(D)(1). As stated in
 
 State v. Vale,
 
 95-0577, 95-1230, p. 4 (La.1/26/96), 666 So.2d 1070, 1072:
 

 This court granted certiorari because the trial court’s ruling [prohibiting the defense from cross-examining the witness about a pending charge], affirmed by the court of appeal, conflict ed with numerous decisions by this court that to the extent exposure of a witness’s motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness’s “hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest.”
 
 State v. Brady,
 
 381 So.2d 819, 822 (La.1980) (collecting cases);
 
 see also State v. Nash,
 
 475 So.2d 752, 755-56 (La.1985). A witness’s bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made
 
 *59
 
 no agreements with the state regarding his conduct.
 
 Id.
 

 Thus, alleged criminal conduct which has not resulted in a conviction may be elicited from a witness at trial to show bias or interest. However, here, no testimony given by Officer Lapene was elicited that could have been directly impeached by extrinsic evidence of the alleged investigation against him. For example, in
 
 State v. Cureaux,
 
 93-0838 (La.App. 4 Cir. 10/27/94), 645 So.2d 1215, this court held that a defendant could impeach an officer’s testimony that he had been a police officer for four years with extrinsic evidence that the officer had been suspended for some sixteen months. Also, cf.,
 
 State v. Hollins,
 
 97-627 (La.App. 5 Cir. 11/25/97), 704 So.2d 307 (the court found that evidence of an officer’s suspension was inadmissible for impeachment purposes because it did not involve a conviction. In a footnote, the court noted that had the officer testified at trial that he was an employee in good standing with the sheriffs office, then the defendant could have impeached him with extrinsic evidence that he had in fact been suspended). In sum, we find that the motion in limine was properly granted by the district court because the evidence of the alleged investigation was inadmissible under La. C.E. arts. 608 B and 609.1 B.
 

 Thompson,
 
 at pp. 6-7, 10 So.3d at 854-55.
 

 Similarly, this case involves a post-trial complaint that Mr. Pleasant should have been allowed to use a testifying officer’s disciplinary file to demonstrate bias or interest. The difference, however, is that Mr. Pleasant disputes the discoverability, not the admissibility. A trial court’s decision regarding the issuance of a
 
 subpoena duces tecum
 
 in discovery proceedings is subject to review for abuse of discretion.
 
 State v. Marcelin,
 
 10-2036, p. 2 (La.10/15/10), 46 So.3d 191, 193. Mr. Pleasant did not demonstrate how the personnel file would be used to impeach Officer Ward. Thus, he has failed to show the trial court abused its discretion. Moreover, any impact of Officer Ward’s testimony on this case is negligible. His trial testimony duplicated Officer Vasquez’s testimony, and the most damaging testimony against Mr. Pleasant was that of the victim, his wife, Mrs. Pleasant. Therefore, we do not find that the trial court erred or abused its discretion.
 

 DECREE
 

 For the reasons stated above, Mr. Pleasant’s conviction and sentence are affirmed.
 

 CONVICTION AFFIRMED; SENTENCE AFFIRMED
 

 [1]
 

 . "B. For purposes of this Section, 'serious bodily injury' means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.”
 

 [2]
 

 . La. R.S. 14:2(A)(3) provides that a " '[d]an-gerous weapon’" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.