DANIEL L. DYSART, Judge.
11 Andrew Neely, Jr., was charged with a violation of La. R.S. 14:62.8(B)(3), home invasion in the presence of a child under the age of twelve years. An Orleans Parish Jury found Neely guilty as charged, and he was subsequently adjudicated a second felony offender. The trial court sentenced Neely to fifteen years at hard labor, ten years of which to be served without the benefit of probation, parole or suspension of sentence, with credit for time served.
Neely argues on appeal that the trial court erred in granting the State’s Motion *1024 in Limine to disallow extrinsic evidence to show witness bias and, that the trial court erred in denying his motion for a downward departure from the mandatory minimum sentence.
For the reasons that follow, we affirm the conviction and sentence.
PROCEDURAL HISTORY:
On October 7, 2012, the defendant, Andrew Neely, Jr., was charged with one count of home invasion, in violation of La. R.S. 14:62.8. After finding probable cause and denying the defendant’s Motion to Suppress Statement, the State amended the bill of information to charge defendant with home invasion in the presence of a child under the age of twelve years, La. R.S. 14:62.8(B)(3).
^Defendant filed a Motion in Limine to use extrinsic evidence to show witness bias, while at the same time, the State filed a motion seeking to exclude the same evidence the defendant sought to use. Defendant’s motion was denied while the State’s motion was granted. Defendant, filed an application for a supervisory writ with this Court, which was denied.[1] A jury trial was conducted on November 11-12, 2013, but the jury could not agree on a verdict. The jury was dismissed, and a mistrial was declared.
A second jury trial was conducted on March 10-12, 2014, wherein the defendant was found guilty as charged, and was thereafter adjudicated a second felony offender. The defendant filed a motion for downward departure from the mandatory minimum sentence, which the trial court denied. He was sentenced to fifteen years at hard labor, with ten years without the benefit of probation, parole or suspension of sentence. The defendant was given credit for time served.
FACTUAL BACKGROUND:
The testimony at trial reflected that the victim, Brianna Moret, lived at 6607 Foch Street in New Orleans, along with her fiancé and their daughter, who was two years old at the time. On September 5, 2012, Hurricane Isaac impacted the New Orleans area, and many residents of Ms. Moret’s neighborhood who evacuated, had not yet returned. Ms. Moret testified that she and her daughter were home alone that evening watching television when she heard someone walk up to her front door and jiggle the door knob, and saw the door knob move. Ms. Moret immediately called 911.' She looked through the front door peephole, but as it was dark out, she could not see the person’s face clearly.. She testified that in the dark, |athe person appeared to be dressed all in black. Remaining on the phone with the 911 operator, she sought refuge in the garage. She saw a silhouette of a man run past her kitchen window, then told the 911 operator that she heard footsteps by the back door, and saw her back door knob being jiggled. She then heard her back door being kicked in, and the defendant chased her through the house, with her daughter in her arms. Ms. Moret ran out the front door as the NOPD officers arrived. She saw the defendant run away, slip, then get up and run towards the corner as he was pursued by police officers.
The 911 recording was played to the jury and gave a chilling account of the entire event, as related by Ms. Moret to the 911 operator. During the 911 call, the terror and panic in Ms. Moret’s voice is evident as she narrates the defendant’s actions in attempting entry to her front door, then forcing entry through her back door, and chasing her with her infant child through the house.
*1025 At trial, Ms. Moret identified the defendant, Neely, as the person who broke into and chased her through her house. She also testified that she saw the defendant after he was apprehended, and was “pretty sure” that she identified him at the scene. She identified her voice on the 911 tape and the photos of her house and, finally, testified that Neely did not have permission to be in her house.
New Orleans Police Officer Demond Davis testified that on the evening of September 5, 2012, at approximately 9 p.m., he responded to a call of a home invasion at 6607 Foch Street. The dispatcher informed Officer Davis that the 911 caller stated that she heard someone on her front porch, and saw a person tampering with her front doorknob, trying to enter the residence. Officer Davis, along with three other police units, responded. As they arrived at the residence, Officer Davis observed Ms. Moret running out of her house, while holding her |4child, and being chased by the defendant. As Ms. Moret ran to the safety of Officer Davis, the defendant turned and ran, but was caught by the other officers.
Officers Jerome Shannon and his partner, Lawrence Fortuna, also testified that they responded to the call at 6607 Foch Street on September 5, 2012, along with Officers Jamal Kendricks and Demond Davis. Both testified that they observed a black female running out of her house, holding a baby, with a black male in pursuit. They testified that when the defendant saw the officers he turned, fell on the ground, got back up and began running away. They pursued and apprehended the defendant, who was identified at the scene by Ms. Moret, and who they identified at trial. After the defendant was apprehended, Officers Shannon and Fortuna entered the residence and noted that the back door was hanging off the hinges.
LAW AND ANALYSIS:
Defendant, Neely, complains of two assignments of error by the trial court: first, that it erred in granting the State’s Motion in Limine to exclude extrinsic evidence, and, second, in failing to make a downward departure from the statutorily mandated sentence.
In his first assignment of error, the defendant contends that the trial court erred in granting the State’s Motion in Limine. The defendant filed a Motion in Limine to use extrinsic evidence to show witness bias on the part of the police officers. Specifically, the defendant sought to introduce evidence to show that one of the officers, Jamal Kendrick, had been fired by the police department sometime after this incident for battery and malfeasance in office that was unrelated to this case. Further, the defendant wished to demonstrate that the police officers were biased because they were the subjects of a federal investigation as a result of a |r,complaint made by him for the beating he received during his arrest. The State opposed the defendant’s motion with its own motion to preclude the introduction of any such evidence and, after a hearing, the trial court granted the State’s motion. The defendant sought a supervisory writ from this Court, which was denied. At trial, the defendant re-urged his Motion in Limine, which was again denied by the trial court.
The State chose not to call Jamal Ken-dricks as a witness, and the defendant failed to issue Kendricks a subpoena in advance of trial. Several instanter subpoenas were issued during the trial in defense counsel’s attempt to obtain Kendrick’s testimony; however, he was never served. The defendant then offered a proffer which consisted of the questions asked of Kendricks at the pre-trial motions hearing.
*1026 Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Lirette, 11-1167, p. 19 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 813. However, this right does not require a trial court to permit the introduction of evidence that is irrelevant, or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. Id. The trial court is accorded great discretion in evidentiary rulings, and, absent a clear abuse of that discretion, rulings on admissibility of evidence will not be disturbed on appeal. State v. Magee, 11-0574, p. 52 (La.9/28/12), 103 So.3d 285, 321.
Louisiana Code Evidence art. 607(A) provides that the credibility of a witness may be attacked by any party, including the party calling him. La.Code Evid. art. 607(D)(2) further provides that “extrinsic evidence, including prior | ^inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.” The admissibility of extrinsic evidence to impeach the credibility of a witness, however, is subject to the relevancy balancing test of La.Code Evid. art. 607(D)(2), which requires the court to determine whether “the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.” See State v. Juniors, 03-2425, p. 52 (La.6/29/05), 915 So.2d 291, 330; State v. Cousin, 96-2973, pp. 8-13 (La.4/14/98), 710 So.2d 1065, 1069-72. Therefore, although La.Code Evid. art. 607(D) permits a party to attack the credibility of a witness through extrinsic evidence, this grant is necessarily subject to the relevancy balancing test of La. Code Evid. art. 607(D)(2), and further to the limitation set forth in La.Code Evid. art. 608(B), which provides that “particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.”
In State v. Adams, 11-1052 (La.App. 5 Cir. 5/16/13), 119 So.3d 46, writ denied, 13-1413 (La.12/6/13), 129 So.3d 531, the defendant sought to introduce evidence of an unrelated criminal case in which he alleged that the police detective obtained a false confession through the use of physical force and coercion. The defendant sought to introduce the evidence for two reasons: (1) to impeach the officer’s credibility, and (2) to prove that the officer had the habit, custom, or |7routine practice of eliciting false confessions from suspects through force or coercion, and that he acted consistently with that habit or practice when he elicited defendant’s confession. Prior to trial, the State filed a motion in limine to prevent the introduction of such evidence, and the trial court granted the State’s motion. The trial court found that the evidence was inadmissible under La.Code Evid. article 608(B). The Fifth Circuit found that the trial court did not abuse its discretion when it granted the State’s motion.
Here, the defense sought to impeach Detective Meunier by introducing evidence of the detective’s interrogation of a suspect in an unrelated criminal case. The allegation that Detective Meunier obtained a false confession in a separate case does not involve a criminal conviction but concerns an alleged particular act or course of conduct, which La. C.E. *1027 art. 608(B) expressly prohibits. See State v. Hollins, 97-627 (La.App. 5 Cir. 11/25/97), 704 So.2d 307, 309, writ denied, 99-0507 (La.8/25/99), 747 So.2d 50. Accordingly, the trial court did not err in excluding, under La. C.E. arts. 608 and 609.1, any testimony- or evidence concerning the alleged false confession ....
Adams, 11-1052, pp. 10-11, 119 So.3d at 53-54.
In State v. Thompson, 08-0874 (La.App. 4 Cir. 4/8/09), 10 So.3d 851, the defendant sought to impeach a police officer with information regarding an investigation of which he was the subject. The State filed a motion in limine to exclude any such evidence, arguing that, because the officer was never convicted of any of the alleged charges, the information regarding the investigation could not be used to impeach the officer. The trial court agreed and granted the motion. In affirming the trial court’s ruling, this Court stated:
Although only convictions can be used to impeach credibility as a general rule, cases have held that possible or ongoing prosecutions that have not resulted in a ' conviction can be used to show bias or interest under La. C.E. art. 607 D(l). As stated in State v. Vale, 95-0577, 95-1230, p. 4 (La.1/26/96), 666 So.2d 1070, 1072:
This court granted certiorari because the trial court’s ruling [prohibiting the defense from cross-examining the witness about a pending charge], affirmed by the court of ^appeal, conflicted with numerous decisions by this court that to the extent exposure of a witness’s motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness’s “hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest.” State v. Brady, 381 So.2d 819, 822 (La.1980) (collecting cases); see also State v. Nash, 475 So.2d 752, 755-56 (La.1985). A witness’s bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. Id.
Thus, alleged criminal conduct which has not resulted in a conviction may be elicited from a witness at trial to show bias or interest. However, here, no testimony given by Officer Lapene was elicited that could have been directly impeached by extrinsic evidence of the alleged investigation against him.
Thompson, 08-0874, p. 6, 10 So.3d at 854-55.
In the present case, the defendant asserts that he sought to cross-examine the police officers about the amount of force used to detain him and the federal investigation into the officers’ actions. The defendant also sought to question the officers about former police officer Jamal Ken-dricks’ alleged history of excessive force. However, the defendant produced no evidence of the alleged federal investigation. Further, Kendricks was not called as a witness and, therefore, no testimony was elicited from Kendricks that could have been directly impeached by extrinsic evidence.
A review of the trial transcript reveals that defense counsel extensively questioned the police officers about the amount of force used to detain the defendant and the defendant’s subsequent injuries. The defendant also produced his medical records at trial, including the records from the treatment he received the night of his arrest. The State stipulated that the defendant suffered a fractured nose.
|c)Any questions about the alleged federal investigation would be prohibited under *1028 La.Code Evid. art. 608(B). There was no evidence that the federal investigation was ongoing or had resulted in the indictment, arrest or conviction of the police officers who testified at trial. • We find that the trial court did not err when it denied the defendant’s Motion in Limine.
Even assuming there was error by the trial court, the error was harmless.[2] Ms, Moret identified the defendant as the person who kicked in her back door and chased her through her house. The police officers who testified all identified the defendant as the person they saw exiting the front of the victim’s home and chasing after the victim and her child. The jury heard the 911 call that captured the entire incident, from the time Ms. Moret called 911 to report that someone was trying to enter her house until the time she ran to the police officers. The alleged “error” did not contribute to the verdict or undermine confidence in it.
We therefore find that this assignment is without merit.
In his second assignment of error, the defendant argues that the trial court erred when it denied his motion for downward departure from the mandatory minimum sentence. The defendant sought a downward departure because of his age (fifty-eight years) and his poor health. The defendant alleged he suffers from congestive heart failure, diabetes and high blood pressure. The defendant had several people write letters and/or testify at the sentencing hearing on his behalf.
hnAfter trial, the trial court ordered the preparation of a pre-sentence investigation report as permitted by La.Code Crim. Proc. art. 875(A)(1). At the sentencing hearing, the trial court referenced the report, noting the defendant had numerous convictions dating back to 1978. The trial court sentenced the defendant to fifteen years at hard labor, with ten years without benefit of probation, parole or suspension of sentence, finding that any lesser sentence would deprecate the seriousness of the offense.
The Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const, art. Ill, '§ I; State v. Dorthey, 623 So.2d 1276, 1278 (La.1993); State v. Taylor, 479 So.2d 339, 341 (La.1985). Acting pursuant to this authority, the Legislature passed the Habitual Offender Law. The Supreme Court has held this statute to be constitutional, and thus, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. Dorthey, 623 So.2d at 1281; State v. Young, 94-1636, p. 7 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528.
Nonetheless, the Supreme Court has acknowledged that even affording the deference due to- the Legislature, the courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In Dorthey, the Su *1029 preme Court recognized that this power extends to the minimum sentences mandated by the Habitual Offender Law. 623 So.2d at 1280-81. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676.
I^A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. Dorthey, 623 So.2d at 1281; Young, 94-1636, p. 5, 663 So.2d at 527. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. Johnson, 97-1906, 709 So.2d at 676.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., 97-1906, 709 So.2d at 676; State v. Pernell, 14-0678, p. 5 (La.App. 4 Cir. 10/15/14), 151 So.3d 940, 944.
In the present case, the trial court reviewed the pre-sentence investigation report, which revealed that the defendant’s criminal history went back as far as 1978 in Pennsylvania. Defendant’s criminal record in Louisiana began in 1981, when he was convicted of simple burglary. In 1982, the defendant was convicted of criminal trespass, and in 1983, he was convicted of driving while intoxicated. In 1987, the defendant was charged with attempted burglary in Pennsylvania, and in 1988, he was charged with breaking and entering with the intent to commit a felony in Maryland. The defendant returned to Louisiana, where in 1990, he was convicted of simple burglary. He was convicted of criminal trespass and criminal damage in 1991. In 1992, the defendant was convicted of attempted simple burglary, and in 2007, • he was convicted of misdemeanor theft. In October 2010, |1gthe defendant was convicted of two counts of burglary. The defendant was still on probation for those offenses when the present offense occurred.
The sentencing transcript reveals that the trial court considered the defendant’s prior criminal history, his age and health, as well as the facts of the present offense. The trial court noted that the incident occurred shortly after Hurricane Isaac had passed, and many of the victim’s neighbors had evacuated. Electrical power had not been completely restored to the area. The trial court recognized that the victim was home alone with her two year old daughter when the defendant entered her home and chased • her out of her house. The trial court referenced the 911 call, which documented the fear, terror and emotional distress the victim suffered as a result of the defendant’s actions. The only evidence that the defendant relied upon to support a downward departure was his age and health conditions. The trial court, in imposing sentence, noted that it had to balance the defendant’s concerns about his health with the seriousness of the offense and the defendant’s criminal history. In light of the evidence presented, the trial court did not err when it denied the defendant’s motion for downward departure. The defendant did not prove by clear and convincing evidence that his situation should constitute an exception to the mandatory minimum sentence. In fact, the sentence imposed by the trial court is clearly supported by the facts of the pres *1030 ent offense and the defendant’s prior criminal history.
We find that this assignment of error is without merit.
On May 22, 2015, this Court received an application for writ of mandamus filed by the defendant. We deny the application.
1 ^CONCLUSION:
Accordingly for the reasons set forth herein, the defendant’s conviction and sentence are affirmed.[3]
AFFIRMED

. State v. Neely, unpub., 13-1416 (La.App. 4 Cir. 10/29/13).

. Sixth Amendment Confrontation Clause errors are subject to harmless error analysis. The correct inquiry is whether the reviewing court is convinced that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674(1986). Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.” Id.; State v. Wille, 559 So.2d 1321, 1332 (La.1990).

. In conducting our review of the record as required by La.Code Crim. Proc. art. 920(2), we note the existence of a sentencing error. Under the general provisions of La.Code Crina. Proc. art. 882(A), an illegal sentence "may” be corrected at any time by an appellate court on review. Because the trial court’s failure to impose the fine was not raised by the State in either the trial court or on appeal, and the defendant is not prejudiced by the trial court's failure to impose the mandatoiy fine, we decline to amend the sentence imposed by the trial court. See State v. Price, 05-2514, pp. 18-22 (La.App. 1 Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc).