618 So.2d 459 (1993)
STATE of Louisiana
v.
Sam FLUKER.
No. 91-KA-1566.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1993.
*461 Floyd M. Gibson, Metairie, for defendant, appellant.
Harry Connick, Dist. Atty. for Orleans Parish, Robin C. Gulledge, Asst. Dist. Atty. for Orleans Parish, New Orleans, for plaintiff, appellee.
Before ARMSTRONG, JONES and WALTZER, JJ.
WALTZER, Judge.
On January 5, 1989, defendant was charged by bill of information with attempted second degree murder on November 30, 1988. He pleaded not guilty; and on May 23, 1989, defendant was tried by a twelve person jury which found him guilty as charged. On March 14, 1990, defendant was sentenced to fifteen years at hard labor.
STATEMENT OF THE FACTS:
On the morning of November 30, 1988, Arthur Thomas dropped off his daughter at a relative's home in the 3500 block of Third Street. Thomas lived there at one time, but had moved away several months before. Defendant lived across the street, and Thomas asked defendant if he could get his hubcaps that he had lent to defendant. Defendant said that he could; and Thomas proceeded to remove the hubcaps from defendant's truck. Thomas, who was accompanied by James Aaron, ran over the hubcaps to flatten them for selling as scrap metal.
Thomas put the hubcaps in his car; and, as he reentered his car, defendant pulled out a .22 rifle and began shooting at Thomas. Defendant had been standing at the back of the truck, but he went to the front where he propped himself up and held the gun in an "off hand" position. Thomas dropped to his knees and crawled to the back of his car where he sat in a crouched position.
Defendant fired the gun several times, striking Thomas' car. Thomas heard the gun click which led him to believe that the gun either was out of ammunition or was jammed. He charged at defendant; and when he grabbed the gun, he began to feel weak and realized he had been shot. Aaron exited Thomas' car and ran to his aid. Aaron got the gun away from defendant, who then fled the scene.
Aaron drove Thomas to the hospital where Thomas was treated for two gunshot wounds. One wound was a relatively minor one in Thomas' left shoulder; but the other was a much more serious wound in his abdomen. The bullet severed two major arteries which caused extensive internal bleeding.
When the police arrived to investigate, defendant returned to the scene and turned himself in. Defendant admitted to Officer Sylve that he shot at Thomas's car and that he and Thomas engaged in a struggle during which the gun went off. Defendant further stated to Officer Sylve that Thomas started hollering that he had been shot and that Aaron then came and took the gun.
The defendant testified at trial that he shot Thomas in self-defense. The defendant stated that when Thomas lived across the street he harassed and intimidated the defendant on a regular basis; that Thomas at one time physically abused him; and that he called the police on several occasions to protect himself from Thomas. The defendant claimed that when he saw Thomas taking back his hubcaps, he thought he had to do something to make sure that Thomas would stop harassing him. The defendant admitted that he shot at Thomas' car, and that as Thomas approached in a crouched position, he became fearful that Thomas was going to pounce on him and fired directly at Thomas.
Thomas admitted at trial that he and the defendant had been in a fight before, during which he began choking the defendant. Thomas stated that after that incident, which occurred about a year before the shooting, he had heard that some of the defendants' friends were armed and looking for him. Thomas also stated that he often had words with the defendant when *462 he was living across the street, and that at one time the two had had a serious dispute over money.
Defendant testified that he was really shooting at Thomas' car, more or less. He stated that he saw Thomas crouched down; and believing that Thomas was about to jump him, defendant shot him. He said that he stopped shooting when he realized Thomas had been shot, and, at which point, Thomas jumped up and grabbed the gun. Defendant testified that he held onto it and fired a couple of rounds in the air before he turned it loose and fled the scene.

DISCUSSION:
ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, defendant complains that the State failed to prove his guilt beyond a reasonable doubt. Specifically, defendant argues that the State failed to prove that he had the specific intent to kill Arthur Thomas and that he did not shoot Thomas in self-defense or in defense of his property. He asserts that if he had intended to kill Thomas, he would have walked right up to Thomas' car and shot, instead of standing across the street to shoot Thomas. He also points to the previous confrontations between him and Thomas which led him to protect himself and his property as he did.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
Turning first to the issue of self-defense, LSA-R.S. 14:19 provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
LSA-R.S. 14:20 sets out four situations in which a homicide is justifiable; and, in a homicide case, the State bears the burden of proving that the killing was not committed in self-defense. State v. Brown, 414 So.2d 726 (La.1982); State v. Johnson, 598 So.2d 1288 (La.App. 4th Cir. 1992). In a nonhomicide situation, the defense of justification requires a dual inquiry, namely: an objective inquiry into whether the force used was reasonable under the circumstances; and, a subjective inquiry into whether the force was apparently necessary. State v. Freeman, 427 So.2d 1161 (La.1983). However, the Supreme Court in Freeman questioned whether the State bore the burden of proving lack of justification in a nonhomicide case, but did not definitively resolve the issue. The Court instead concluded that even if the State had the burden of proof, it proved beyond a reasonable doubt that the defendant did not act in self-defense.
Louisiana courts are divided on whether the defendant bears the burden of proving self-defense in a nonhomicide case. Citing Freeman, the First, Second, Third, and Fifth Circuits have stated that the burden of proof lies with the defendant. See State v. Hall, 606 So.2d 972 (La.App. 3d Cir. 1992); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Willis, 591 So.2d 365 (La.App. 1st Cir.1991), writ den., 594 So.2d 1316 (La.1992); State v. Barnes, 491 So.2d 42 (La.App. 5th Cir.1986). However, the Circuits seem reluctant and not fully convinced in adopting a rule of law which places the burden of proving self-defense by a preponderance of the evidence on the defendant. The Fifth Circuit, in a lengthy and persuasive discussion in State v. Barnes, supra at 45-48 held that the defendant had the burden of proof. However, the following year, the Fifth Circuit expressly declined to follow the precise holding in Barnes, and instead opted for a review of the record under both standards: whether the defendant proved self-defense by a preponderance of the evidence and whether the State proved the absence of self-defense beyond a reasonable doubt. *463 State v. Agnelly, 515 So.2d 821, 823 (La. App. 5th Cir.1987). The First, Second and Third Circuits all have applied the same review in nonhomicide cases involving self-defense. State v. Perkins, 527 So.2d 48, 49-50 (La.App. 3d Cir.1988); State v. Navarre, 498 So.2d 249 (La.App. 1st Cir.1986); State v. Zeno, 469 So.2d 337 (La.App. 2d Cir.1985), writ den., 474 So.2d 1303 (La. 1985); See also State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
Our own Circuit recently declined to resolve the issue. In State v. Corey Sparrow, 612 So.2d 191, 197 (La.App. 4th Cir. 1992), this court noted the language in Freeman; but concluded that even if the State bore the burden of proof, the State carried that burden. This Circuit has therefore never adopted which party has what burden of proof when the defendant raises a claim of self-defense in a nonhomicide case.
Only a few of the criminal statutes expressly refer to an affirmative defense. LSA-LSA-R.S. 14:63 (trespassing) and LSA-R.S. 14:69 (possession of stolen property). These statutes, and insanity under LSA-R.S. 14:14, LSA-R.S. 15:432 and LSA-C.Cr.P. article 652, are the only defenses which are expressly designated affirmative. See State v. Barnes, 491 So.2d at 46; See also State v. Cheatwood, 458 So.2d 907 (La.1984). However, the statutes which provide for exculpatory circumstances, like justification, do not provide any indication that the defendant bears the burden of proving that his act falls under one of those provisions. LSA-R.S. 14:18, 14:19 and 14:20. We see no distinction between these provisions, and fail to see why the State would have the burden of disproving in one situation (homicide), and why the defendant would bear the burden of proving in another (nonhomicide). Absent a clear direction from our legislature, we feel that the defendant should not have the burden of proving anything.
Some courts have noted the distinction between defenses which go to one of the essential elements of the crime being charged (like intoxication, mistake of fact) and those defenses which present exculpatory circumstances (like justification). State v. Barnes, supra at 46.[1] However, while the distinction is interesting, we see little of what it has to do about which party has the burden of proof. Under our Louisiana Constitution, every defendant is innocent until proven guilty. La. Const. Article I § 16 (1974). The State bears the burden of proving guilt beyond a reasonable doubt. Id. Except where expressly stated by the legislature, the State should bear the burden of proving every aspect of the defendant's guilt. Where an issue of exculpatory circumstances exists, it should be the State's burden to disprove such a claim of innocence.
Turning now to the record of the case presently before us, our review reveals that the State carried its burden.
There was no justification for the shooting in order to prevent the removal of the hubcaps from defendant's truck because they had already been removed and were in Thomas' truck when defendant opened fire. As to the prevention of a forcible offense against himself, defendant did not act with legal justification. Defendant clearly was the aggressor, and as such, he should not be able to claim self-defense. LSA-R.S. 14:21. Thomas was preparing to get in his car and drive away when defendant began shooting. Although there was a history of conflict between the two, Thomas did not commit any act which could have led defendant to fear for his safety that would have justified defendant's opening fire with a shotgun. The State therefore negated, beyond a reasonable *464 doubt, defendant's claim of self-defense.
As to the question of proof of intent, second degree murder requires proof of specific intent to kill or to inflict great bodily harm; but, attempted second degree murder requires proof of specific intent to kill and the commission of an act tending to accomplish that purpose. State v. Strother, 362 So.2d 508 (La.1978); State v. Pittman, 604 So.2d 172 (La.App. 4th Cir.1992), writ den., 610 So.2d 796 (La. 1993); State v. Banks, 496 So.2d 1099 (La. App. 4th Cir.1986). Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. LSA-R.S. 14:10(1). Intent either can be proven by direct evidence or can be inferred from the circumstances of the case. State v. Pittman, supra; State v. Govan, 593 So.2d 833 (La.App. 4th Cir. 1992), writ denied 600 So.2d 654 (La.1992).
Defendant testified that he was only shooting at Thomas' car, but he did so while Thomas was trying to get into it. Furthermore, he admitted to shooting Thomas deliberately while Thomas was crouched down behind the car. From these facts, a rational trier of fact could reasonably conclude that defendant had the specific intent to kill Thomas; therefore, the State proved all the essential elements of attempted second degree murder. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, defendant complains that the trial court erred in not declaring a mistrial when a juror was admonished about being asleep during jury instructions. Shortly after the trial judge commenced instructing the jury, he stated:
Ask the young lady next to you to sit straight up. I am going to have to hold you in contempt of Court [sic] for sleeping during instructions.
There was no request by either defendant or the State that a mistrial be declared or that the sleeping juror be replaced by the alternate juror. There is nothing in the record indicating how long the juror had been asleep. The sleeping juror was not identified, and there is no further reference in the record to the juror's being held in contempt.
Because defendant made no objection to the juror's remaining on the panel, there is no basis for reviewing any alleged error. C.Cr.P. art. 841. This assignment of error is without merit.
The defendant's conviction and sentence are therefore affirmed.
AFFIRMED.
NOTES
[1] In addition to discussing the above described distinction, the Barnes Court further noted that proof of self-defense in a nonhomicide case requires a subjective inquiry into whether the defendant believed that the amount of force used was necessary. Barnes, supra at 46. The Court reasoned that it would be unfair to the State to burden them with such an inquiry. However, a countless number of criminal statutes require the State to prove beyond a reasonable doubt the subjective intent of the defendant. We therefore do not believe that such a subjective inquiry would in any way cripple the State's case in future situations.