885 So.2d 602 (2004)
STATE of Louisiana
v.
George WISCHER.
No. 2004-KA-0325.
Court of Appeal of Louisiana, Fourth Circuit.
September 22, 2004.
Eddie J. Jordan, Jr., District Attorney, Battle Bell IV, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
*603 Eric J. Hessler, Frank G. DeSalvo, A.P.L.C., New Orleans, LA for Defendant/Appellant.
(Court composed of Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME).
DAVID S. GORBATY, Judge.
Defendant George Wischer appeals his conviction and sentence for simple battery. For the following reasons, we affirm the conviction, vacate the sentence and remand for resentencing.

STATEMENT OF CASE:
On April 24, 2003, the State indicted George Wischer for second-degree battery, a violation of La.Rev.Stat. 14:34.1. Following a two-day bench trial, the judge found the defendant guilty of simple battery, a violation of La. Rev. Stat 14:35, and subsequently sentenced him to six months in parish jail, suspended, one year inactive probation, and ordered him to pay a fine of $2,500.00 and $148.00 in court costs.

STATEMENT OF FACT:
Paula Lynn Farrior, the victim, testified that she has a history of depression, anxiety, agoraphobia, and that she is prone to self-mutilation. She receives therapy, psychiatric treatment and medication for her disorders. On the night of January 17, 2003, two police officers came to her house reporting that they had received a call that someone in the house was trying to hurt herself.[1] Ms. Farrior allowed the officers to enter the house and assured them she was the only person on the premises. She denied trying to hurt herself. The officers looked around and commented on the unkempt condition of her house. The officers questioned her about the scratches on her wrists and arms, and she explained that the cuts were two days old. They told her they were going to transport her to the hospital for her safety. She refused to go, so they handcuffed her hands behind her back. She denied resisting the officers in any manner. When backup officers arrived, making a total of six officers in her house, Ms. Farrior yelled for them to close her front door because her cats would get out. Ms. Farrior explained to the female officer on the scene that she was under treatment and wanted to call her personal physician rather than being transported to Charity Hospital. The officers began to shackle her legs. Ms. Farrior was frightened and started twisting and screaming, trying to get away. Although she resisted being shackled, she did not try to kick or hit any of the officers. As she was shackled, the defendant, Officer George Wischer, punched her on the left side of her face and continued to hit her even after she was shackled and had stopped resisting. The defendant called her "bitch" as he hit her. When Ms. Farrior arrived at Charity Hospital, the left side of her face was bruised and swollen. Her left eye was swollen shut. She was sent to the psychiatric ward for evaluation but was not kept for observation. She was released the same night with instructions to report to the eye clinic the next morning. Ms. Farrior suffered pain for several days after the incident and could not wear her eyeglasses because of the swelling and pain. She has a scar under her left eye. Ms. Farrior identified pictures of the injuries to her face and eye.
The State and the defense stipulated that the police officers had the right and duty to take Ms. Farrior into custody for *604 treatment based upon their observations that night.
Sgt. Jody Crocher[2] testified that she was on patrol around midnight on January 17, 2003, when she heard the defendant and Officer Doyle request backup. Crocher drove to the residence where she met Officers Mark Gareno [3] and Jody LaRoche, who also responded to the defendant's call. As Sgt. Crocher entered the residence, Ms. Farrior was yelling about her cats getting out of the door left open by the officers. Sgt. Crocher also heard Ms. Farrior say she wanted to kill herself. The defendant and Officer Doyle were trying to persuade Ms. Farrior to accompany them to the hospital. The officers handcuffed Ms. Farrior, and seated her on the floor. Although Ms. Farrior resisted being handcuffed, she was not combative but only wanted to get away and not be touched. Sgt. Crocher called for shackles because she feared Ms. Farrior would attempt to escape. Officer Richter arrived ten minutes later and attempted to shackle her. Ms. Farrior was placed on her back, with her hands cuffed behind her. She began to cry, and twist on the floor to thwart Richter's effort. Officers Gareno and LaRoche restrained Ms. Farrior's legs. The defendant was kneeling on Ms. Farrior's left side, near her shoulders and head. Sgt. Crocher stationed herself between the defendant and the officers holding Ms. Farrior's legs. Ms. Farrior began wiggling and trying to escape the officers restraining her. Sgt. Crocher was facing Ms. Farrior's feet but turned when she heard a noise as if someone was being struck. She saw the defendant strike Ms. Farrior multiple times in rapid succession with a closed fist. After the incident when Sgt. Crocher questioned the defendant about his conduct, he told her that Ms. Farrior bit him on the thigh. However, the defendant said nothing at the time of the biting. Sgt. Crocher stated that Ms. Farrior had no injuries to her face prior to the officers' attempt to shackle her, but as Ms. Farrior was walked out to the police car, Sgt. Crocher saw the extent of the injuries to the left side of her face and left eye. Sgt. Crocher ordered the defendant to return to the Third District station until further notice.
Lt. Henry Waller [4] and Officer Jody LaRoche testified for the defense.
Lt. Waller said that he saw the defendant at the Third District station shortly after midnight on January 17, 2003. Lt. Waller noticed that the defendant's uniform was ripped and that he had a paper towel wrapped around a bleeding finger on his left hand. Lt. Waller directed that photographs be taken of the defendant's finger, the condition of the defendant's uniform and the defendant's left knee, because he complained of swelling in the knee. He identified the photographs at trial. Lt. Waller documented the defendant's injuries in a First Report of Injury as related by the defendant: " ... while attempting to handcuff the subject the employee received scrapes to his left wrist and left ringer finger. Subject also bit the employee through his pants leg causing slight swelling to the inside of his left knee." Lt. Waller admitted that he did not see any bite marks on the defendant, but he did note swelling in the left knee area. The defendant was drug tested *605 and then taken to a clinic for treatment of his scrapes. On cross-examination, Lt. Waller testified that the defendant told him Ms. Farrior attempted to bite him.
Officer Jody LaRoche testified that he and his partner, Mark Gareno, also responded to the defendant's backup request. When Officer LaRoche entered the house, the victim was visibly disturbed. He noted that the victim had "I want to die" and "six, six, six" scratched on her arms. All of the officers attempted to persuade the victim to seek medical help, but she refused. As officers handcuffed the victim for transport to the hospital, she became combative. It took at least 3 officers to handcuff her. After handcuffing her, the officers sat the victim on the floor awaiting the arrival of the shackles ordered by Sgt. Crocher. When the victim saw the shackles, she started violently kicking at the officers and twisting her torso to escape. Officers LaRoche and Gareno restrained the victim's legs with their hands and ordered her to stop resisting, to no avail. Officer LaRoche heard the defendant say that the victim bit him during the struggle but did not see any biting because he was focused on restraining the victim's legs. He did not hear the defendant call Ms. Farrior a bitch or strike her. When Officer LaRoche entered the house, there were no injuries to the victim's face. He denied looking at her face at all before he left the scene.
NOPD Criminalist Joseph Tafaro performed a forensic light test on the defendant's pants and shirt. Testing showed the presence of some unidentified possible biological material on the right pants leg.
The defendant testified that on the night of January 17, 2003, he responded as backup to a signal 103M call  mental subject armed with a knife. He met Officer Doyle at the location and made contact with Ms. Farrior explaining the reason for their visit. Ms. Farrior allowed the officers to enter her residence, at which time the defendant noticed cuts on Ms. Farrior's wrists. She admitted that she was depressed and contemplating suicide, so the defendant suggested she go to Charity Hospital for evaluation but she refused. Ms. Farrior became agitated and combative. The defendant called for backup. With the arrival of backup, the officers continued to calmly persuade Ms. Farrior to seek psychiatric care. Ms. Farrior steadfastly refused the request and began evading the officers, moving around the house. The officers decided to handcuff her to contain her movements and to ensure her safety. As the defendant placed the first cuff on Ms. Farrior, she swung at him, grazing his face with her fist. The officers forced her to the ground face first, and, as a group, forced her other arm behind her to complete the handcuffing process. A few minutes later, Officer Richter arrived with the shackles requested by Sgt. Crocher. The sight of the restraints caused Ms. Farrior to kick at the officers and flip-flop on the floor to thwart their efforts to subdue her. Two officers immobilized Ms. Farrior's legs. The defendant placed his left knee on her chest to inhibit torso movement. As the defendant held Ms. Farrior, she raised her head with her mouth open, and made contact with the inside of his left knee. He punched her in the face. When she attempted to come at him with an open mouth a second time, he punched her again. He did not believe she had broken his skin, but he felt pressure. The defendant testified that when Sgt. Crocher asked him what had happened, he told her that the victim had bitten him. Sgt. Crocher visually inspected the area of his knee, then ordered him to the station. He admitted that he did not know if Ms. Farrior had actually bitten him when he reacted by punching her. When asked if he *606 could have just pushed the victim's head down with his free hand instead of punching her, the defendant responded that it would not have been practical. The defendant maintained he acted reasonably in defending himself.

ERRORS PATENT:
A review for errors patent reveals an error in the sentencing. Whoever is convicted to simple battery shall be fined not more than five hundred dollars, imprisoned for not more than six months, or both. The trial court imposed a fine of $2500. Accordingly, we vacate the sentence of the trial court, and remand for resentencing in accordance with the statute.

ASSIGNMENT OF ERROR:
In a sole assignment of error, the defendant argues the court erred in convicting him of simple battery because his conduct was justifiable as self-defense and reasonable under the circumstances. La.Rev.Stat. 14:18 and 14:19.
To obtain a conviction for simple battery, the State must prove that the defendant intentionally used force or violence upon the victim without the victim's consent. La.Rev.Stat. 14:33, 14:35.
Louisiana Revised Statute 14:18 provides that "[t]he fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct." Further, the defense of justification can be claimed when any crime, except murder, is committed when the offender's conduct is an apparently authorized and reasonable fulfillment of any duties of public office. La.Rev.Stat. 14:18(1). (emphasis supplied). Since "justification" defenses are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused's conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by the preponderance of evidence. La.Rev.Stat. 14:18; State v. Cheatwood, 458 So.2d 907 (La.1984).
La.Rev.Stat. art. 14:19 provides in part: "The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person ... provided that the force or violence used must be reasonable and apparently necessary to prevent such offense...." (emphasis supplied).
As noted by this Court in State v. Fluker, 618 So.2d 459, 462 (La.App. 4 Cir.1993): "In a nonhomicide situation, the defense of justification requires a dual inquiry, namely: an objective inquiry into whether the force used was reasonable under the circumstances; and, a subjective inquiry into whether the force was apparently necessary." Other courts of appeal in Louisiana have held that as an affirmative defense, the defendant has the burden of showing justification by a preponderance of the evidence. See State v. Wright, 99-1137 (La.App. 3 Cir. 3/1/00), 758 So.2d 301, writ denied, State ex rel Wright v. State, XXXX-XXXX (La.3/9/01), 786 So.2d 118; State v. Barnes, 491 So.2d 42 (La.App. 5 Cir.1986). See also State v. Cheatwood, 458 So.2d 907 (La.1984), where the Supreme Court discussed this burden and stated:
It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of the offense and to require defendant to prove by preponderance of evidence the exculpatory circumstances constituting the "affirmative" defense. The statutory provisions setting forth the states burden of proof *607 refer only to the requirement that the state prove the elements of the crime  not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense.
Cheatwood, 458 So.2d at 910, fn. 4 (emphasis in original) (citations omitted).
It is the opinion of this Court that we adopt the position set forth by the Supreme Court in Cheatwood, and adopted by the 3d and 5th Circuits.
A conviction cannot stand if no rational trier of fact could find the defendant guilty as charged based on the record as a whole. State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The appellate court reviews the record in its entirety because a rational trier of fact would consider all of the evidence presented. The appellate court presumes that the trier of fact acted rationally. Id. Rational credibility calls, rational decisions on the weight of the evidence, and rational inferences drawn from the evidence must stand. Id.
Although defendant contends that his actions were justified in that he acted in self-defense, he failed to prove necessity, i.e., that the threat of force by another was imminent and apparent, and that he had no reasonable alternative but to punch the victim numerous times. He also failed to prove justification, i.e., that he was in imminent peril of great bodily harm, or reasonably believed himself or others to be in such danger. His self-serving testimony that he thought the victim might head-butt other officers was not corroborated by any other testimony or evidence.
The defense witnesses, Lt. Waller, Officer LaRoche, and Criminalist Tafaro gave no support to the defendants testimony. Lt. Waller did not witness the exchange between the defendant and the victim, and Officer LaRoche admitted he could not see if the victim had bitten the defendant because his attention was focused on subduing the victims legs. Criminalist Tafaro testified as to the possible presence of an "unidentified biological material" on the defendant's right pants leg. However, Lt. Waller testified that the defendant reported to him that the victim bit the defendant's left leg. Moreover, no testing ever proved that the material Tafaro detected was saliva.
The State's witness, Sgt. Jody Crocher, on the other hand testified that she heard "a loud noise that sounded like someone was being struck ... like a fist making contact with ... flesh." Sgt. Crocher turned in the direction of the sound and "... saw Officer Wischer kneeling over Ms. Farrior. And I saw his arm coming up and his fist going down. It was ... multiple blows in rapid succession ... [c]losed fist." Sgt. Crocher testified that the first time the defendant said anything about being bitten was after the incident as he was leaving the scene. Moreover, Sgt. Crocher's testimony indicates that at the time the defendant struck the victim, she was immobilized. She was lying on the floor with her hands cuffed behind her back. Four officers  three holding her legs and the defendant restricting the victim's torso movement, restrained her. The officers' restraint immobilized the victim and rendered her incapable of turning over.
Upon sentencing the defendant, the trial judge noted:
... you are rightly or wrongly placed (sic) a higher level of confidence in the professional training, temperament and judgment of people who we as the general public entrust with this level of responsibility. Mr. Wischer, you failed us, you failed us in that regard. Yet, sir, I once again recognize that, that cool *608 reflection allows us, after put in the situation, of looking back on what you did and deliberating on the wisdom of the judgments that you made on that day when you yourself had but a few brief moments to react to what was happening before you. I also heard testimony that there was a similar experience in your professional background which may have played a role in your reaction, your response. Yet, the court once again reminds you that the level of responsibility that was placed upon your shoulders as a law enforcement professional would in fact have mandated your reaction be dramatically different than it was.
After reviewing the record in its entirety, this Court finds no error in the trial judge's conclusion that the defendant failed to prove that his action was necessary or reasonable.
Accordingly, we affirm the conviction. The sentence is vacated and this matter is remanded to the trial court for resentencing in accordance with the provisions of La.Rev.Stat. 14:35.
CONVICTION AFFIRMED; SENTENCE VACATED, AND REMANDED.
BELSOME, J., concurs in Decree with Reasons.
BELSOME, J., concurring in decree with reasons.
I concur in the result rendered by this court, but respectfully disagree with the majority opinion's interpretation of LSA R.S. 14:18 and 14:19, determining that a criminal defendant in a non-homicide case should bear the burden of proving self-defense or justification. This court discussed the very issue in State v. Fluker, 618 So.2d 459 (La.App. 4 Cir.1993), stating:
Under our Louisiana Constitution, every defendant is innocent until proven guilty. La. Const. Article I § 16 (1974). The State bears the burden of proving guilt beyond a reasonable doubt. Id. Except where expressly stated by the legislature, the state should bear the burden of proving every aspect of a criminal defendant's guilt.
LSA R.S. 14:18, 14:19 and 14:20 specifically set forth the provisions under which a defense of justification applies. The justification statutes are silent as to the defendant bearing any burden of proof. Logically, if the State must disprove a defendant's assertion of innocence in a homicide case, the state shall also bear that burden in a non-homicide case. The lack of distinction between the statutes does not support this majority opinion's reasoning that in a non-homicide case the burden of proof is lessened to a preponderance of the evidence and shifts to the defendant.
In State v. Freeman, 427 So.2d 1161 (La.1983), Chief Justice Calogero acknowledged that there was no Louisiana jurisprudence distinguishing the burdens of persuasion applicable to self-defense in homicide and non-homicide cases. He further stated that it was a "narrow legal issue" that did not have to be resolved for the court to decide the Freeman case. Id. at 1163. Likewise, I do not believe the facts of this case warrant a determination of that "narrow legal issue" to affirm Officer Wischer's conviction. The State met their burden of disproving Officer Wischer's assertion of self-defense beyond a reasonable doubt.
Officer Wischer's conduct would have been justified only if it was apparently authorized and reasonable in the fulfillment of his duties. LSA R.S. 14:18(1). It is undisputed that at the time Officer Wischer assaulted Ms. Farrior, she was lying on her back, handcuffed while officer Officer Wischer knelt on her left side. Assuming that Officer Wischer's claim that *609 Ms. Farrior bit him was true the extent of force used against Ms. Farrior, several closed fist punches to the face, was unreasonable under the given circumstances. Therefore, I agree with this court's result, but for the reasons discussed cannot join in the majority opinion's reasoning.
NOTES
[1] Apparently, one of the victim's unnamed friends contacted the police and expressed concern that the victim was suicidal.
[2] During the course of the trial, some of the witnesses refer to Sgt. Crocher by her other name "Colmenaro."
[3] The transcript indicates that this officer's name was spelled phonetically.
[4] Lt. Waller held the rank of sergeant at the time of this incident.